IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TONY JORDAN, JR.                                                               PLAINTIFF

v.                                          Civil No. 5:16-cv-05161

KARAS HEALTH CARE; and
NURSE VIRGINIA REED                                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, Tony Jordan, Jr., under 42 U.S.C. §

1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable P. K.

Holmes, III, Chief United States District Judge, referred this case to the undersigned for the

purpose of making a Report and Recommendation.  Currently before the Court is Defendants'

Motion for Summary Judgment.  (Doc. 28)  After careful consideration, I make the following

Report and Recommendation.

## BACKGROUND

Plaintiff filed his Complaint on June 30, 2016, against Defendant Karas Health Care and

other parties[1] alleging a violation of his constitutional rights for being given the wrong medication

while Plaintiff was incarcerated at the Washington County Detention Center ("WCDC").  (Doc.

1)  At the time of the incident Plaintiff was a pretrial detainee.  Plaintiff is currently incarcerated

in the Arkansas Department of Correction – Wrightsville Unit, in Wrightsville, Arkansas.  He is

suing Defendants Karas Health Care and Nurse Virginia Reed in both their official and individual

capacities.  Plaintiff is seeking compensatory and punitive damages.  (Docs. 1, 34)

---

[1] The Court dismissed two of the original Defendants, both jailers from the Washington County Sheriff's
Office, on September 28, 2016 (Docs. 17, 18).

Defendants Karas Health Care and Reed filed a summary judgment motion on February 10, 2017, alleging they are entitled to judgment as a matter of law because: 1) administration of a single dose of the wrong medication does not rise to the level of a constitutional violation; 2) Defendant Reed was not deliberately indifferent to Plaintiff's medical needs; 3) there is no liability for potential damages under 42 U.S.C. § 1983; 4) verbal abuse does not rise to the level of a constitutional violation; 5) Defendant Reed is entitled to qualified immunity; and, 6) there is no basis for official capacity liability against Karas Heath Care.  (Doc. 28)[2]  Plaintiff filed his Response to the summary judgment motion on June 28, 2017.  (Doc. 41)

Plaintiff was taken into the custody of the WCDC on May 21, 2016.  According to Plaintiff's Detainee Prescription List, he was taking naproxen, keflex, and citaloprim during his incarceration.  (Docs. 30-2, 30-3)  On June 9, 2016, at approximately 7:25 p.m., Plaintiff alleges he was given six or seven pills instead of his usual two or three.  Plaintiff states that the pills were not prescribed to him and that he began feeling "real funny."  He indicates his heart was pounding, his eye was twitching, he felt off balance, and was weak.  He asserts he was not given any of his correct medication.  At 7:51 p.m. that same evening, Plaintiff states he went back out to see Defendant Reed about having received the wrong medication.  Plaintiff alleges she admitted she had given him the wrong medication and then took Plaintiff's blood pressure which was 150/100. Plaintiff alleges this was very high but they refused to get him "better help."  Plaintiff claims he told Defendant Reed that he suffered from high blood pressure and an enlarged heart.  (Doc. 1, p. 4)

---

[2] Plaintiff filed a Supplement to his Complaint (Doc. 34) naming Nurse Virginia Reed as a Defendant. She was formally served on April 5, 2017 (Doc. 37) and filed an Answer on April 7, 2017 (Doc. 36). Defendant Reed adopted Defendant Kara Health Care's Motion for Summary Judgment and supporting pleadings on May 3, 2017 (Doc. 39).

Plaintiff states each WCDC inmate has a wrist band identification bracelet which allows the staff to identify inmates. He claims Defendant Reed should have looked at the identification bracelet, and that if she had done so she would not have confused Plaintiff with another African American inmate. (Doc. 34, pp. 1-2) He also claims Defendant Reed refused him medical care "by a Doctor with a MD or Phd" after she gave Plaintiff the wrong medication. (Doc. 34, p. 2) Plaintiff also claims he was subjected to excessive force when Defendants were "pointing fingers at me blaming me for taking the pill instead of rushing me to more help or a echo kilogram to check my heart or organs and being rude and unprofessional." (Doc. 1)

Defendant Reed is a medical assistant employed by Defendant Karas Health Care. On June 9, 2016, she states she was on duty at the WCDC. Part of her duties included performing "med pass" during which prescribed medications were distributed to inmates at the door of their housing unit. Using a large cart equipped with a computer terminal to transport the necessary medications, she was escorted by Washington County Deputies and went to the door of each pod. According to her Affidavit, Defendant Reed asked that the inmates be lined up in alphabetical order because that is the way the records are arranged. As the door to each pod was opened, the inmates came out one at a time and took their medication. At the doorway to B-pod, she called for an inmate with the last name of Cooper.[3] Cooper is an African American male. When Defendant Reed looked up from getting the medication together and logged into the system, an African American male was standing in front of the cart. Defendant Reed believed that person to be Mr. Cooper. She then handed him the medication, seven pills in all, and he took the medication. (Doc. 30-9, ¶¶ 2-4)

---

[3] Plaintiff disputes that Reed called him by name but that dispute is not material for purposes of ruling on the Motion for Summary Judgment.

The medication Defendant Reed had prepared for inmate Cooper included hydrochlorothiazide (a blood pressure medication), baclofen (a muscle relaxer), naproxen (an over the counter pain reliever), gabapentin (an anti-convulsant prescribed for pain), magnesium, fish oil, and Seroquel (a mood stabilizer and anti-psychotic). (Doc. 30-9, ¶ 5) Plaintiff was prescribed three medications: keflex (an antibiotic), naproxen (an over the counter pain reliever) and citalopram (an antidepressant). (Doc. 30-9, ¶ 6) Defendant Reed states: "sometime later Cooper walked up to me and asked to take his medication. … I did not intentionally give Jordan medications which were not prescribed for him. The administration of the medication was accidental." (Doc. 30-9, ¶¶ 7-8)

After realizing what had happened, Defendant Reed reported it to other WCDC staff and EMT Kenneth Hughes was asked to look into it. Shortly thereafter, Hughes and Defendant Reed went to speak with Plaintiff who was being assisted on the stairs by another inmate. Plaintiff appeared to be lethargic. When Hughes approached Plaintiff he became defensive and alert and indicated that he was going to sue for providing him with the wrong medications. Hughes examined Plaintiff and his vital signs were taken at least twice following the medication administration. (Doc. 30-9, ¶ 9)

Although the medications were not prescribed to him, Defendant Reed states she "confirmed with other staff and am of the opinion that, a single dose of the medications would either have no effect or would perhaps make Jordan drowsy (a result of the muscle relaxer and anti-psychotic)", that "this was the reason he was instructed to lie down," and "there is no medical evidence to support affected vision or balance or an eye twitch days after such a low dose of the medications." (Doc. 30-9, ¶ 10) Defendant Reed claims Plaintiff was agitated and was involved in a verbal argument with Hughes because Plaintiff demanded to be taken to the hospital and

4

continued to threaten legal action.  (Doc. 30-9, ¶ 11)  She states she and Hughes later determined that no further medical interventions were needed because Plaintiff was not in any medical danger.  (Doc. 30-9, ¶ 12)

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United

States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).  The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### 1.  Denial of Adequate Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants Karas Health Care and Reed acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).  In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

In order for Plaintiff to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation[,] [d]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Plaintiff's claim of denial of medical care fails as a matter of law for several reasons. Here, Plaintiff admits that Defendant Reed gave him the wrong medication "on accident." (Doc. 30-6, p. 56) The accidental administration of a dose of medication on one occasion does not constitute deliberate indifference to a serious medical need. *Nard v. Colclough,* 2007 WL 30218 (W.D. Ark. Jan. 8, 2007); *McClain v. Howard,* 2015 WL 6123063 (W.D. Ark. Sept. 21, 2015), citing *Crites v. Bunt,* 2014 WL 2738432 (S.D. Ill June 17, 2014) (giving an inmate the wrong medication on a single occasion at most supports a finding that the officer was negligent).

In addition, the evidence shows after Defendant Reed discovered her mistake she immediately notified other staff and obtained the assistance of an EMT to treat and evaluate Plaintiff. After taking Plaintiff's vital signs, instructing him to lie down, and observing him she and the EMT determined Plaintiff was in no medical danger. Although Plaintiff alleges he should have been taken to the hospital or seen by a doctor after being given the wrong medications, this is a mere disagreement with treatment decisions and does not give rise to the level of a constitutional violation. *Popoalii,* 512 F.3d at 499.

Finally, Plaintiff alleges he is entitled to damages because: "I could have been killed or my heart could be inlarged again. My liver, kidneys, feet or anything could be damaged and they left me here locked down to suffer and didn't seek any real help for me…I could feel my heart

7

pounding and my eye still twitches and bad balance and my eye sight." (Doc. 1)  Despite these claims, Plaintiff did not seek treatment while incarcerated at the WCDC for these alleged conditions after ingesting the wrong medications.  Moreover, Plaintiff has not provided the Court with any medically verified proof of these injuries.

At best, the proof in this case permits a finding that Defendant Reed was negligent in not verifying the identity of Plaintiff prior to giving him the medications on June 9, 2016.  Consequently, Plaintiff has not shown Defendants were deliberately indifferent to his medical needs and his claims against them fail as a matter of law.

### 2.   Excessive Force

Plaintiff, a pretrial detainee at the time of the incident, cannot be punished.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."  *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996).  The Supreme Court addressed the legal standard applicable to pretrial detainee excessive force claims holding "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015).  The *Kingsley* Court noted:

> [O]bjective reasonableness turns on the "facts and circumstances of each particular case. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.  *See ibid.*  A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgement" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Here, there is no allegation or proof that any person exerted any physical force on Plaintiff. In his deposition, Plaintiff admitted "[n]obody put their hands on me." (Doc. 30-6, p. 35)  Instead, Plaintiff claims he was subjected to excessive force when Defendant Reed and another employee

of Defendant Karas Heath Care pointed their fingers at him and blamed him for taking the wrong medications.  The Eighth Circuit has held that "verbal abuse is normally not a constitutional violation."  *Doe v. Gooden,* 214 F.3d 952, 955 (8th Cir. 2000) (citing *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir. 1985)); accord *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997) (generally, mere verbal threats made by a state actor do not constitute a § 1983 claim.).  The Eighth Circuit has also held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience and amount to a severe invasion of personal security and autonomy.  *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560 (8th Cir. 1988).

Plaintiff's allegations that Defendant Reed and others pointed their fingers at him and blamed him for her mistake in administering the incorrect medication does not "shock the conscience and amount to a severe invasion of personal security."  While Plaintiff may have been embarrassed or suffered some discomfort as a result of the comments, this does not rise to the level of a constitutional violation.  *Wise,* 855 F.2d at 565 (minor discomfort and hurt feelings do not make a federal case).  Accordingly, Plaintiff's claim of excessive force fails as a matter of law.

### 3.  Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants Karas Health Care and Reed are entitled to qualified immunity.  *See Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### 4.  Official Capacity Claim

Section 1983 provides a federal cause of action for the deprivation, under color of state law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a

defendant acted under color of state law and violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998).  With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010).   In other words, Plaintiff's official capacity claims against Defendant Karas Health Care and Reed are treated as claims against Washington County.  *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor."  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish Defendants' official capacity liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity."  *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).  To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom.  To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that

misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).

In this case, there are only allegations with regard to a single incorrect administration of medication to Plaintiff on June 9, 2016.   Plaintiff has not presented any evidence of an unconstitutional policy or custom of Defendant Karas Health Care that contributed in any way to a violation of Plaintiff's civil rights.   A single mistake does not establish a policy, practice or custom.

Accordingly, Plaintiff's claims against Defendants Karas Health Care and Reed in their official capacity fail as a matter of law.

<h3 style="text-align:center">CONCLUSION</h3>

For the reasons stated, I recommend Defendant Karas Health Care and Defendant Reed's Motion for Summary Judgment (Doc. 28) be **GRANTED** and all claims against them be **DISMISSED WITH PREJUDUCE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of July, 2017.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

11